UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HALL & ASSOCIATES,

    Plaintiff,

        v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

    Defendant.

Civil Action No. 14-808 (JDB)

## MEMORANDUM OPINION

Plaintiff Hall & Associates, a Washington, D.C., firm, recently won a lawsuit for its clients against the Environmental Protection Agency ("EPA" or "the Agency"), the defendant in this case. See Iowa League of Cities v. EPA, 711 F.3d 844, 878 (8th Cir. 2013). That success led to this dispute. Hall sought access under the Freedom of Information Act ("FOIA") to EPA documents regarding the effect of its clients' victory (e.g., will the decision apply only in the Eighth Circuit or more broadly?), and the Agency responded to Hall's request, producing some documents but withholding many others. Hall considered this response inadequate, and it brought the present case to force EPA to be more forthcoming. The government, for its part, has filed a motion to dismiss Hall's complaint. Upon consideration of the parties' filings,[1] and for the reasons explained below, the Court will grant EPA's motion and dismiss this case.

## BACKGROUND

This case begins where another ends. In March 2013, the Eighth Circuit decided Iowa League of Cities, a suit challenging two "regulatory requirements with respect to water treatment processes at municipally owned sewer systems." 711 F.3d at 854. Hall—representing the

---

[1] See Gov't's Mot. to Dismiss Compl. [ECF No. 8] ("Gov't's Mot."); Pl.'s Opp'n to Gov't's Mot. [ECF No. 10] ("Pl.'s Opp'n"); Gov't's Reply to Pl.'s Opp'n [ECF No. 12] ("Gov't's Reply").

1

League, see Compl. [ECF No. 1] at 2—argued that EPA's regulations were invalid, either because the Agency lacked statutory authority to impose them, or because it adopted them in violation of the Administrative Procedures Act.  See Iowa League of Cities, 711 F.3d at 854. And the Eighth Circuit agreed, vacating the rules.  Id. at 878.  The reach of this victory, however, was unclear.  Although EPA repeatedly suggested that the case's impact would be modest, Hall sought information from EPA regarding its "intentions for implementing the . . . decision" and whether "the Agency would be applying [it] nationwide."  Compl. at 2.  Hall alleges, for example, that "top officials" announced at public meetings that the Agency planned "to limit the decision in the 8th Circuit," while another administrator circulated a letter to explain that "[t]he Eighth Circuit's decision applies as binding precedent in the Eighth Circuit."  Id.

In light of EPA's comments, Hall sent a series of messages to the Agency, requesting documents under FOIA that might reveal the government's official position vis-à-vis Iowa League of Cities.  Hall's original request cast a wide net, seeking information from not only EPA headquarters, but also the Agency's ten regional offices.  See Ex. to Compl. [ECF No. 1-3] ("Ex.") at 8–9.  Hall later amended its request three times:  the first amendment slightly expanded the information requested, see id. at 11–12 (requesting additional information regarding a recent meeting between "EPA . . . , the States, and the regulated community"); the second amendment went the other direction, narrowing the categories of information requested from EPA, see id. at 17–18 ("Please provide only the following records . . ."); and the third amendment went further still, substantially narrowing the geographic scope of the request by limiting the search to documents housed at EPA headquarters, see id. at 23 ("All the Regional FOIA[] requests . . . are hereby withdrawn.").  The Agency estimated that the requested search

2

(as amended) would cost $1,073.25, id. at 25, and Hall agreed to pay EPA's asking price—even if begrudgingly.[2]  The quoted cost, the firm complained, was "inconceivable."  Id. at 28.

Once the parties had settled on the scope (and price tag) for Hall's request, EPA searched its files and found several documents it considered responsive to the request.  In its "interim, partial response" dated December 24, 2013, the Agency released six documents but declined to produce twenty-one more, claiming that the withheld documents fell within various exemptions under FOIA.  Id. at 30–34.  EPA later supplemented this response with a final letter on January 29, 2014.  Id. at 50.  The Agency did not release any documents in this second response, but it did identify forty-nine additional responsive documents that it chose to withhold because the documents were either pre-decisional or attorney-client privileged (and, thus, exempt from disclosure under 5 U.S.C. § 552(b)(5)) or investigatory documents collected for law-enforcement purposes (and, thus, exempt under 5 U.S.C. § 552(b)(7)).  See id. at 51, 52–59.  EPA also notified Hall that its search for these seventy-odd documents was slightly cheaper than expected, and it charged the firm only $1,015.75.  Id. at 51.

Hall formally appealed EPA's response on February 25, 2014.  Hall's appeal letter highlighted two concerns regarding the Agency's efforts.[3]  First, Hall complained that the "documents produced by [EPA] Headquarters did not respond to the FOIA request."  Id. at 62.  And second, Hall argued that—because EPA's search had not revealed any responsive documents—the final bill for its efforts was "inappropriate and excessive."  Id. at 63.  Hall therefore vowed "not [to] pay the Agency for [its] non-responsive, frivolous response."  Id.

---

[2] Hall's FOIA request was for "commercial use" within the meaning of EPA's regulations.  40 C.F.R. § 2.107(c)(1).  Per these regulations: "A requester seeking access to records for a commercial use will be charged for the time spent searching for the records, reviewing the records for possible disclosure, and for the cost of each page of duplication.  The charges for searching for and/or reviewing the records may be charged even if no responsive records are found or if the records are located but are determined to be exempt from disclosure."  Id.

[3] Hall's complaint alleges that the firm also raised a third issue:  "the appropriateness of withholding documents [from release], or segregable portions thereof."  Compl. at 8.  Whether Hall actually raised this issue in its appeal letter is, of course, an important question in this case that will be discussed infra at 6–10.

A month later, EPA denied Hall's appeal—for the most part. The Agency explained its decision by first noting what Hall had <u>not</u> appealed in the firm's February letter. "Nowhere in your letter of appeal," EPA wrote, "do you mention or challenge the FOIA exemptions which were the basis for withholding of documents and portions of documents by [the Agency]. Nor do you raise concerns regarding the sufficiency of the search conducted in order to provide documents to you." <u>Id.</u> at 66. And regarding what Hall <u>did</u> appeal, EPA rejected the firm's no-responsive-documents claim, concluding that the records "explicitly relate to the subject of [Hall's] request, i.e., Agency action subsequent and related to the <u>Iowa League of Cities</u> decision by the 8th Circuit Court of Appeals." <u>Id.</u> at 67. Hall did not leave the appeal empty-handed, however. EPA offered to reduce its final bill to $903.75—a $112 discount.[4] <u>Id.</u>

Still unsatisfied, Hall answered EPA's March 2014 letter with the present complaint. Hall now alleges that EPA violated FOIA when it (1) "fail[ed] to provide a legitimate basis for withholding[] responsive documents"; (2) "fail[ed] to fully and completely respond to [the firm's] FOIA request"; and (3) charged the firm an "excessive and inappropriate" fee. Compl. at 9. In response, the Agency has moved to dismiss Hall's complaint, because (it argues) Hall failed to exhaust at least one of its FOIA claims before resorting to the federal courts, and because its complaint otherwise fails to state a claim. <u>See</u> Gov't's Mot. at 6–8.

## DISCUSSION

I. MOTION TO DISMISS

   A. **Legal Standard**

The government brings its motion to dismiss Hall's complaint under two Federal Rules of Civil Procedure: 12(b)(1), which counsels dismissal for lack of subject-matter jurisdiction, and

---

[4] EPA did not admit any wrongdoing by this reduction, however. The Agency explained "that the fees charged cover both the necessary search and review of documents potentially responsive to [Hall's] request," but it nonetheless "agreed to reduce the total fees . . . from five hours to . . . one hour of manager time." Ex. at 67.

12(b)(6), which does the same for failure to state a claim. But only one of these rules is appropriate here. EPA contends that Rule 12(b)(1) applies to Hall's complaint because the firm failed to administratively exhaust at least one of its claims, thus depriving this Court of jurisdiction over that claim. See Gov't's Mot. at 5–6. But binding precedent says otherwise. As this Circuit has held, the "exhaustion requirement is not jurisdictional because . . . FOIA does not unequivocally make it so." Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (emphasis added). Courts instead treat exhaustion as "a condition precedent to the bringing of a FOIA action," which means that a plaintiff's failure to exhaust a FOIA claim is "properly the subject of a motion [to dismiss] brought under Rule 12(b)(6) for failure to state a claim upon which relief may be granted." Jones v. U.S. Dep't of Justice, 576 F. Supp. 2d 64, 66 (D.D.C. 2008). The Court will therefore consider EPA's motion to dismiss under the standards of Rule 12(b)(6), rather than those of Rule 12(b)(1).[5]

The 12(b)(6) standards are not overly taxing. To survive a motion to dismiss under this rule, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [that] give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Although "detailed factual allegations" are not necessary in a complaint, plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (internal quotation marks omitted). Put differently, the "complaint must contain sufficient factual matter, accepted as true, to state a

---

[5] The Court will apply the 12(b)(6) standard to both EPA's failure-to-exhaust argument and its failure-to-state-a-claim argument. See infra at 6–14. "Although FOIA cases typically and appropriately are decided on motions for summary judgment, where an agency argues that the requester has failed to exhaust his administrative remedies, courts analyze the matter under Rule 12(b)(6) for failure to state a claim." Jean-Pierre v. Fed. Bur. of Prisons, 880 F. Supp. 2d 95, 100 n.4 (D.D.C. 2012) (internal quotation marks and citation omitted). Moreover, neither party relies on any evidence outside the pleadings in this case; thus, there is no reason to treat EPA's motion to dismiss as one for summary judgment. See Fed. R. Civ. P. 12(d); Russell v. Harman Int'l Indus., Inc., --- F.3d ---, 2014 WL 6996138, at *1 (D.C. Cir. Dec. 12, 2014); Colbert v. Potter, 471 F.3d 158, 164 (D.C. Cir. 2006).

claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). When conducting these sufficiency-of-the-complaint tests, "the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Courts must therefore presume that plaintiffs' factual allegations are true and give plaintiffs every favorable inference regarding their alleged facts. See id.; see also Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). There are limits to this plaintiff-friendly gloss, however. The presumption of truth does not extend to "'legal conclusion[s] couched as . . . factual allegation[s],'" and the same goes for inferences that lack factual support in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

  **B.** **Failure to Exhaust**

On the merits of the 12(b)(6) motion, then: "It goes without saying that exhaustion of remedies is required in FOIA cases." Dettman v. U.S. Dep't of Justice, 802 F.2d 1472, 1476 (D.C. Cir. 1986). That is to say, plaintiffs must first raise their FOIA arguments to the administrative agency "before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Hidalgo, 344 F.3d at 1258 (internal quotation marks omitted). And "[i]t is likewise clear that a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request." Dettman, 802 F.2d at 1477. In cases like this, the courts will "consider only those aspects . . . which [s]he properly exhausted." Kenney v. U.S. Dep't of Justice, 603 F. Supp. 2d 184, 190 (D.D.C. 2009).

This exhaustion-of-remedies rule dooms one of Hall's three FOIA claims. As described, Hall seeks relief based in part on EPA's alleged "failure to provide a legitimate basis and rationale for withholding[] responsive documents, or segregable portions thereof." Compl. at 9. But Hall did not raise this ground for relief until it filed the complaint in this case—and that is far too late. A close look at Hall's February 2014 appeal letter confirms the point. "For the reasons set forth more thoroughly below," Hall wrote, "please consider this letter to be an administrative appeal of EPA's [FOIA] response . . . ." Ex. at 61. And what were those "reasons"? Hall (using numbered, bolded text) gave two: "1. The responsive documents produced by Headquarters did not respond to the FOIA request"; and "2. Headquarters' fee of $1,015.75 is inappropriate and excessive." Id. at 62, 63. There is no third reason listed in the letter; nowhere in the letter does Hall specifically challenge EPA's decision to withhold any document; and, more to the point, nowhere in the letter does Hall complain about the "basis and rationale" for EPA's decision to withhold. Hall's withholding claim is therefore an unexhausted one, and it must fall by the wayside. See Dettman, 802 F.2d at 1477 ("If exhaustion of remedies is to have meaning, it surely must bar review of the claim advanced here.").

Hall, of course, disagrees, and the firm points to two stray lines in its February 2014 appeal letter for support. But neither line suffices to show that Hall "exhaust[ed] [its] administrative remedies . . . in a way that put[] the agency on notice of what aspects of the agency's response [were] contested." Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 100 (D.D.C. 2013) (emphasis added). Consider Hall's first proffered line, which comes from the letter's opening paragraph: "As the primary purpose of FOIA is to ensure an informed citizenry . . . it is inappropriate that EPA would withhold records . . . from the public." Ex. at 61 (internal quotation marks omitted). To be sure, this introductory, background sentence uses the words

7

"withhold" and "inappropriate," but these two words could not put EPA on notice that Hall took issue with the Agency's use of FOIA exemptions to withhold documents. The very next sentence, after all, explains that Hall is appealing "[f]or the reasons set forth more thoroughly below"—and those reasons do not include EPA's withholding decisions. Id.

A similar story goes for Hall's second line. "[I]t was inappropriate for EPA to withhold such documents from the public and charge an excessive fee for conduct[ing] a search that does not relate to the records actually requested," Hall wrote. Id. at 63–64. This line, too, uses the words "withhold" and "inappropriate"—but, again, context matters. For one thing, the sentence falls within the inappropriate-and-excessive-fees section of the appeal letter, which suggests that Hall's real complaint is with the price the Agency charged for its (purportedly) less-than-revealing search. Indeed, fairly read and in context, that is what the sentence says. For another, the sentence says nothing to contest the rationale EPA used to explain its withholding choices (i.e., that FOIA exempts these documents from disclosure). Hall, in short, failed to raise any specific complaint regarding EPA's withholding behavior, it did not put the Agency on notice of its looming withholding claim, and it therefore deprived EPA—and this Court—of the benefits of exhaustion. In other words, EPA managers had no opportunity "to correct mistakes made at lower levels," the Agency was not able "to make a factual record to support its decision," and it could not "obviate[] unnecessary judicial review." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990); see also Hidalgo, 344 F.3d at 1259.

Hall argues in response that EPA's FOIA regulations did not require the firm to explicitly raise a withholding challenge in order to administratively exhaust that claim. As Hall reads things, so long as the firm appealed some aspect of EPA's FOIA response, it necessarily appealed all aspects of EPA's response. See Pl.'s Opp'n at 9–11. But this is wrong, for several

reasons.  First, the text of EPA's regulations does not support Hall's reading.  The regulations say:  "If you are dissatisfied with any adverse determination of your request by an office, you may appeal that determination . . . .  The appeal letter may include as much or as little related information as you wish, <u>as long as it clearly identifies the determination being appealed</u>."  40 C.F.R. § 2.104(j) (emphasis added).  Moreover, the regulations define "adverse determination" as, among other things, "a determination to withhold any requested record in whole or in part; . . . a determination that what has been requested is not a record subject to the FOIA; [or] a determination on any disputed fee matter."  <u>Id.</u> § 2.104(g).  The upshot of these two provisions is that Hall was obligated to do more than just generally appeal EPA's final response letter.  The firm, instead, was required to clearly and specifically appeal <u>each</u> adverse determination within the response letter that it disagreed with and sought review of—including EPA's determination "to withhold . . . requested record[s]."  It failed to do so here; hence, this claim is unexhausted.

Second, even if the language of EPA's FOIA regulations were ambiguous, this Court has no license to upset EPA's preferred reading, which requires specificity in adverse-determination appeals.  The courts, after all, must give substantial deference to an "agency's reasonable interpretation of its own . . . regulations"—including FOIA regulations.  <u>Al-Fayed v. CIA</u>, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001); <u>see also</u> <u>United States v. Cleveland Indians Baseball Co.</u>, 532 U.S. 200, 220 (2001).  And here, EPA's interpretation is more than just a reasonable one; it is the best one, given the text.  Other courts have enforced a specificity-of-appeal requirement in the FOIA exhaustion context, <u>see, e.g.</u>, <u>Dettman</u>, 802 F.2d at 1477 (plaintiff may exhaust one aspect of a request without exhausting others); <u>Kenney</u>, 603 F. Supp. 2d at 190 (same); <u>Lair v.</u>

Dep't of Treasury, 2005 WL 645228, at *3–4 (D.D.C. Mar. 21, 2005) (same),[6] and this Court will do the same.

Third, Hall has not uncovered any authority that counsels a contrary reading of EPA's regulations. The firm (in a footnote) cites a Fourth Circuit case to support the proposition that plaintiffs need only raise "some objection" to a FOIA response "in order to satisfy the exhaustion requirement." Pl.'s Opp'n at 11 n.12 (citing Coleman v. DEA, 714 F.3d 816, 825 (4th Cir. 2013)). But this citation changes nothing. While the Fourth Circuit follows the (common sense) rule that "a requester need not provide the agency with every nuance and detail of a particular claim before exhaustion can be found," 714 F.3d at 825, this approach does not thereby relieve FOIA requesters of their burden to be at least somewhat specific regarding the bases for their appeals. Indeed, the Coleman court endorsed elsewhere the (also common sense) rule that "requests . . . must be made with reasonable specificity," and it found that the FOIA plaintiff in that case had met this requirement. Id. at 826 (internal quotation marks omitted). The same cannot be said here, where Hall uttered "'not a word'" about EPA's withholding justifications. Id. at 825 (quoting Dettman, 802 F.2d at 1476)).

C.   **Failure to State a Claim**

The Court will also dismiss Hall's remaining claims—but for a different reason. Beyond its withholding-of-documents argument, recall that Hall's complaint alleges two problems with EPA's FOIA response: that the Agency "fail[ed] to fully and completely respond to [the firm's]

---

[6] Hall hopes to distinguish these cases, arguing that they did not involve EPA regulations, and that these cases were decided at the summary-judgment (rather than motion-to-dismiss) stage. But these are distinctions without a difference. EPA's regulations are materially consistent with, for example, the Department of Justice regulations at issue in Dettman and Kenney. Compare 40 C.F.R. § 2.104(j) ("The appeal letter may include as much or as little related information as you wish, as long as it clearly identifies the determination being appealed.") with 28 C.F.R. § 16.9(a) ("Your appeal letter may include as much or as little related information as you wish, as long as it clearly identifies the . . . determination . . . that you are appealing."). And it is beyond dispute that questions of exhaustion are just as appropriately decided at the motion-to-dismiss stage of litigation as they are at the summary-judgment stage. See, e.g., Hidalgo, 344 F.3d at 1257 ("[W]e conclude Hidalgo failed to exhaust his administrative remedies and, accordingly, we . . . remand to the district court to dismiss the complaint for failure to exhaust.").

FOIA request," and that the Agency charged the firm an "excessive and inappropriate" fee for its search. Compl. at 9. To the extent these claims reiterate the arguments from Hall's February 2014 appeal letter (i.e., that EPA failed to produce any responsive documents in its FOIA search, and that this failure makes the price tag for EPA's search excessive, see Ex. at 62–63), the firm has administratively exhausted these claims.[7] But that is not the end of the matter. The question remains whether the allegations in Hall's complaint—accepted as true—suffice to state a claim upon which relief can be granted.

The answer is no. Start with Hall's no-responsive-documents claim. Even if the Court credited the firm's version of events, the claim fails because general complaints about the results of a search do not amount to a cognizable FOIA claim. See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs., 844 F. Supp. 770, 777 n.4 (D.D.C. 1993) (Courts "look[] to the method of search rather than sheer results."). That is to say: FOIA recognizes challenges to the adequacy of an agency's search (the methods used in the search, the places searched, etc.), although Hall, of course, did not raise such a claim, focusing instead on the (disappointing) results obtained from EPA's search. See supra at 11 n.7. But the firm has not identified a single

---

[7] Hall, however, has not limited itself to these exhausted claims. Though its appeal letter is silent about the "adequacy" of EPA's review, Hall now argues—in its brief in opposition to EPA's motion to dismiss—that "it is indisputable that the adequacy of EPA's search was challenged by [Hall] multiple times throughout the administrative process and is a factual issue that is clearly in dispute." Pl.'s Opp'n at 13. But calling something indisputable does not make it so. A close look at Hall's appeal letter reveals that the firm repeatedly questioned the "responsive[ness]" of the documents uncovered in EPA's search, concluding that "the Agency conducted the wrong assessment." See Ex. at 62–63. But adequacy-of-the-search claims are not about "the fruits of the search" (i.e., the quality, quantity, or responsiveness of documents an agency finds); they are, instead, about "the appropriateness of [the agency's search] methods." Hodge v. FBI, 703 F.3d 575, 579 (D.C. Cir. 2013) (internal quotation marks omitted). In other words, to raise an adequacy-of-the-search challenge, Hall must give some indication that EPA failed to search for documents in certain locations, for example, or that it failed to speak to certain individuals. See id. at 580. Hall's appeal letter does not include such allegations. Moreover, even if the appeal letter (read very generously) did raise an adequacy claim, the firm opted against repeating that claim in its complaint. Indeed, Hall's complaint alleges only that it contemplates lodging some future adequacy challenge—and therefore has not yet done so. See Compl. at 9 (asking the Court to "[o]rder EPA to respond to each of Plaintiff's requests fully and completely in a manner that will allow [Hall] to gauge the adequacy of the response" (emphasis added)). In sum, Hall's adequacy challenge comes far too late, and the Court will give no weight to it. See, e.g., Guzman v. U.S. Dep't of Homeland Sec., 679 F.3d 425, 429 (6th Cir. 2012) ("When presented with . . . a [12(b)(6)] motion, courts consider whether the complaint states a claim upon which relief could be granted, not whether the plaintiff has stated—or could state—such a claim elsewhere [e.g., in a brief in opposition to a motion to dismiss].").

11

case that stands for the proposition that mere frustration with the outcome of a search entitles a FOIA requester to relief. The authorities, indeed, suggest that no such relief is available. See, e.g., 40 C.F.R. § 2.107(c)(1)(i) ("The charges for searching for and/or reviewing the records may be charged even if no responsive records are found."); SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."); Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue . . . is not whether there might exist any other documents possibly responsive to the request, but rather whether the search . . . was adequate."). Thus, the Court must dismiss this claim.

And even if FOIA recognized such claims, Hall's allegations fall short of stating one. In its appeal letter, Hall alleged that "none of the documents provided by the Agency in its Partial Response are responsive to [Hall's] FOIA request, nor is it apparent that the documents withheld in the Partial and Final Responses were related to the actual request." Ex. at 63 (emphasis added). But the firm tells quite a different story in its complaint. On more than one occasion, Hall's complaint alleges that EPA's search uncovered responsive documents. "Upon review of the Agency's exempt document list," Hall wrote, "there are numerous documents that, based upon their titles, were responsive and improperly withheld." Compl. at 8 (emphasis added). And elsewhere: "As the list of withheld documents makes clear, EPA has prepared several detailed assessments of the Agency's position as to the applicability of the Iowa League of Cities[] decision. These basic documents should be released for the public to review." Id. Taking these factual allegations as true—that EPA's search did uncover responsive documents, which the Agency chose to withhold—renders Hall's no-responsive-documents claim "[im]plausible on its face." Iqbal, 556 U.S. at 678. Dismissal is therefore appropriate.

The failure of Hall's no-responsive-documents claim also sinks the firm's excessive-and-inappropriate fee claim. Hall's appeal letter included just one explanation for its sticker shock: "EPA has charged [Hall] a fee of $1,015.75 for conducting a search and review of records which clearly do not respond to [Hall's] FOIA request. Thus, the fee is inappropriate and excessive." Ex. at 63 (emphasis added). Hall's complaint echoes this allegation. See, e.g., Compl. at 3 ("EPA charged an excessive fee in light of the fact the Agency did not respond to [Hall's] narrowly-crafted FOIA request." (emphasis added)). But as explained above, Hall also admits that the Agency's search actually did produce responsive documents. And Hall has not offered any alternative factual allegation to support its excessive-fee claim. Without more, the Court is left with Hall's bare assertion that EPA's fee is somehow excessive or inappropriate. This is not enough to avoid dismissal. See Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation . . . requires more than labels and conclusions."); see also Hall & Assocs. v. U.S. Envt'l. Prot. Agency, --- F. Supp. 2d ---, 2014 WL 400677, at *4 (D.D.C. Feb. 4, 2014) ("[P]laintiff's bare allegation that a fee assessment is unreasonable . . . is insufficient to avoid summary judgment.").

Hall responds that it is premature to dismiss its no-responsive-documents claim, contending that it has not admitted that EPA uncovered any responsive documents, and accusing the Agency of taking quotes from Hall's appeal "wildly out of context." Pl.'s Opp'n at 12. But Hall's admission or non-admission is immaterial; as described above, the firm's mere frustration with the results of EPA's search does not a cognizable FOIA claim make. Moreover, Hall's complaint says what it says: "[T]here are numerous documents that . . . were responsive and improperly withheld." Compl. at 8 (emphasis added). That statement—read in context—is a necessary allegation to support one of the firm's claims for relief: that the Court "[e]njoin EPA from withholding all responsive records, or segregable portions thereof, that were requested by

Plaintiffs, and order their immediate disclosure to Plaintiff." Id. at 9 (emphasis added). The context thus confirms the Court's decision to dismiss this no-responsive-documents claim, because the allegations in the complaint undercut the appealed, exhausted version of this claim.

Finally, Hall argues that its excessive-fee claim ought to survive, because "the responsiveness and adequacy of EPA's search is clearly in dispute," and because "EPA has provided no affidavits justifying its fee or the hours spent reviewing and searching by its personnel." Pl.'s Opp'n at 14. Neither argument is convincing. To start, responsiveness and adequacy are not "in dispute"—both parties now admit that EPA's search uncovered responsive documents,[8] see supra at 12–13, and Hall failed to raise any adequacy-of-the-search claim in its appeal letter and complaint, which makes the argument unexhausted or irrelevant (or both) for purposes of this case, see supra at 11 n.7. Moreover, EPA is not obligated to produce affidavits to support its motion to dismiss for at least two reasons. First, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint—not the defendant's answer to that complaint. See Iqbal, 556 U.S. at 677–78. And second, Hall's complaint does not challenge any aspect of EPA's invoice—not the number of hours the Agency spent on its search, not the billing rate the Agency used to calculate its fee, etc. See Ex. at 43–45 (documenting these calculations). EPA therefore had no reason to provide an affidavit to explain its unchallenged search-fee math.

## II. MOTION TO STRIKE

There is one final matter the Court must resolve.[9] Three days after submitting a reply in support of its motion to dismiss, EPA filed a notice of errata that sought to modify a single

---

[8] And, again, disappointment with the results of a search does not forgive Hall's obligation to pay, regardless of what the firm did or did not admit. See 40 C.F.R. § 2.107(c)(1)(i).

[9] See Gov't's Errata [ECF No. 13] ("Errata"); Pl.'s Mot. to Strike Errata [ECF No. 14] ("Pl.'s Mot."); Gov't's Opp'n to Pl.'s Mot. [ECF No. 15] ("Gov't's Opp'n"); Gov't's Cross-Mot. to Substitute Corrected Reply Mem. [ECF No. 16] ("Gov't's Cross-Mot."); Pl.'s Reply to Gov't's Opp'n [ECF No. 17] ("Pl.'s Reply"); Pl.'s Opp'n to Gov't's Cross-Mot. [ECF No. 18] ("Pl.'s Cross-Mot. Opp'n"); Gov't's Reply to Pl.'s Cross-Mot. Opp'n [ECF No. 19].

footnote in its brief.  The change?  Footnote 1 in the original brief said:  "In contrast, the final decision here—the <u>public</u> decision of the Agency to only apply <u>Iowa League of Cities</u> in the Eighth Circuit—is publicly known and is not 'secret law' of the sort that section 553(a)(2) was designed to prevent."  Gov't's Reply at 3 n.1.  EPA now wants the footnote to read as follows: "In contrast, EPA's letter of April 2, 2014 (Compl., Ex. 2)—which, according to Plaintiff, is the culmination of an alleged decision by the Agency to only apply <u>Iowa League of Cities</u> in the Eighth Circuit—is publicly available and is not 'secret law' of the sort that section 553(a)(2) was designed to prevent."  Errata at 1.  As EPA sees things, this change simply "clarif[ies] that . . . EPA accepts the truth of the allegations of Plaintiff's complaint . . . only for purposes of EPA's pending motion to dismiss."  <u>Id.</u>  But Hall has called foul, filing a motion to strike EPA's errata because (Hall argues) it is a material change that will cause the firm prejudice.  The Court is unpersuaded and will deny Hall's motion.

"[M]otions to strike, as a general rule, are disfavored," although the grant or denial of such motions is ultimately left to this Court's discretion.  <u>Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib.</u>, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam).  And here, Hall has not met its burden to convince the Court to buck the general rule.  <u>See</u> <u>Nwachukwu v. Rooney</u>, 362 F. Supp. 2d 183, 190 (D.D.C. 2005).  The firm argues first that EPA "materially change[d] its arguments" and therefore "exceeded th[e] standard" for errata, which are only meant "'to correct . . . clerical errors,'" Pl.'s Mot. at 1 (quoting <u>Odland v. Fed. Energy Regulatory Comm'n</u>, --- F. Supp. 2d ---, 2014 WL 1244773, at *12 (D.D.C. Mar. 27, 2014)).  But this argument gets both the facts and the law wrong.  On the facts:  the only difference between the original footnote and its correction is the nuance that although EPA accepts as true Hall's factual allegations regarding the decision to apply (or not apply) <u>Iowa League of Cities</u> in various jurisdictions, it does so only

for purposes of this motion. But in the motion-to-dismiss context, EPA must accept Hall's version of the facts—with or without this nuance. See Iqbal, 556 U.S. at 678. EPA's change therefore materially changes nothing. And on the law: courts will sometimes allow errata to correct more than "clerical errors," as Odland itself demonstrates. 2014 WL 1244773, at *12 (accepting errata that "included additional substantive legal argument" because defendants were "not prejudiced by the filing"); see also Willis v. U.S. Dep't of Justice, 581 F. Supp. 2d 57, 64 n.7 (D.D.C. 2008) ("Defendants also submitted an Errata to correct a footnote and to submit an additional exhibit.").

      Hall persists that the Court should nevertheless strike EPA's errata because the modification will cause it prejudice in both a separate case and the present one. See Pl.'s Reply at 6–7. Neither allegation suffices. First, Hall points to Center for Regulatory Reasonableness v. EPA, No. 14-1150, a case pending before the D.C. Circuit. Apparently, EPA argued in that case that it has not yet made a decision regarding the application of Iowa League of Cities outside the Eighth Circuit, and Hall wants to use EPA's original footnote to rebut this argument. But Hall is not a party to the D.C. Circuit case—it merely serves as appellant's counsel. And so it cannot suffer any prejudice in that case—at least not prejudice of the legally cognizable variety. See, e.g., Charles Alan Wright, et al., 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed. 2014) (motions to strike are limited to those that "may cause . . . significant prejudice to one or more of the parties to the action" (emphasis added)). Second, Hall contends that allowing EPA's errata will cause prejudice in this case, because the change might bolster EPA's argument for withholding records under FOIA. But the Court has already dismissed Hall's withholding-of-records challenge for failure to exhaust, see supra at 6–10—a failure that has nothing to do with EPA's errata. That challenge, in other words, was a loser from the start and therefore cannot support Hall's

16

prejudice claim.  See Andretti v. Borla Performance Indus., 426 F.3d 824, 830 (6th Cir. 2005) (finding no prejudice in motion-to-strike context where "there is no indication that the outcome of the motion [for summary judgment] would have been different").

## CONCLUSION

The Court will therefore deny Hall's motion to strike EPA's errata.  Moreover, the Court will grant EPA's motion to dismiss this case, because Hall failed to exhaust one of its claims, and because Hall's remaining allegations fail to state a claim upon which relief can be granted.  A separate Order has issued on this date.

/s/

JOHN D. BATES  
United States District Judge

Dated:  December 31, 2014